IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 12-cv-0351-WJM-KMT

CHERYL M. FOLEY,
THOMAS WILNER,
JANE WILNER,
CHARLES JACKSON,
MARY JACKSON, and
KEVIN B. ALLEN, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

CORDILLERA GOLF CLUB, LLC, a Delaware limited liability company,
CORDILLERA GOLF HOLDINGS, LLC, a Delaware limited liability company
CORDILLERA F&B, LLC, a Delaware limited liability company,
CGH MANGER, LLC, a Delaware limited liability company,
DAVID A. WILHELM, and
PATRICK WILHELM,

    Defendants.

v.

ALPINE BANK, a/n/a Counterclaimant and Cross-Claimant,

    Intervenor Defendant

---

**ORDER MAKING ORDER TO SHOW CAUSE ABSOLUTE,
DECLINING JURISDICTION OVER THIS ACTION AND
REMANDING TO EAGLE COUNTY DISTRICT COURT**

---

On February 9, 2012, Defendants filed a Notice of Removal alleging that this Court has jurisdiction over the above-captioned action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) & 1453. (ECF No. 1.) Exercising its duty to

independently monitor its subject matter jurisdiction, *see Daigle v. Shell Oil Co.*, 972 F.22d 1527, 1539 (10th Cir. 1992) (court has duty to ensure "even *sua sponte* that we have subject matter jurisdiction before considering a case"), the Court issued an Order to Show Cause on February 16, 2012.  (ECF No. 10.)  The Court ordered the parties to show cause as to why it should not decline jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(3) or (4).  (*Id*. at 2.)

Before the Court are the parties' responses to the Order to Show Cause.  (ECF Nos. 43, 47, 54, 55, & 58.)  For the reasons set forth below, the Court makes the Order to Show Cause absolute, declines to exercise jurisdiction over this matter, and remands this case to Eagle County District Court.

## I.  LEGAL STANDARD

A party invoking the jurisdiction of the federal court has the initial burden of establishing that the Court has original jurisdiction over the matter.  *See Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) ("Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.").  Once original jurisdiction is established, the party seeking in to invoke one of CAFA's exceptions bears the burden of showing that such exception applies.  *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007) (noting that the "party seeking remand bears the burden to prove an exception to CAFA's jurisdiction"); *Evans v. Walter Industries, Inc.*, 49 F.3d

1159, 1164 (11th Cir. 2006) ("[W]hen a party seeks to avail itself of an express statutory exception to federal jurisdiction granted under CAFA, as in this case, we hold that the party seeking remand bears the burden of proof with regard to that exception."); *Seat v. Farmers Group, Inc.*, No. CIV-06-0309-F, 2006 WL 1285084, at *2 (W.D. Okla. May 5, 2006) ("[U]nder [Section 1332(d)(3) or Section 1332(d)(4)] plaintiff has the burden to demonstrate that the criteria of those statutes are met before either of those exceptions to the court's exercise of federal jurisdiction can apply.").

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are members of The Club at Cordillera ("Club"), a property located in Eagle County, Colorado comprised of four golf courses, tennis courts, restaurants, and other related amenities.  (Third Amended Complaint (ECF No. 3).)  Approximately 160 of the Plaintiffs paid an additional deposit to become Premier Members of the Club.  (*Id*. ¶ 24.)  Defendants are entities and individuals that have various ownership interests in and/or management responsibilities for the Club.  (*Id*.)

In early 2011, Defendants informed the Club members that all facilities would be open and operating for the 2011 season.  (*Id*. ¶¶ 25-32.)  After these representations were made, Plaintiffs paid membership dues for 2011 which totaled in excess of $8,000,000.  Defendants then informed the Club members that only one golf course would be open and other amenities would be significantly curtailed in an effort to save money.  (*Id*. ¶ 35.)

In June 2011, Plaintiffs filed the instant action in Eagle County District Court alleging that Defendants breached their membership agreements, fraudulently induced Plaintiffs into paying 2011 dues, and misused the funds that were intended to operate the Club. (*Id*. at 2-8.) The Eagle County District Court was actively managing this litigation and other related cases. (ECF No. 1.) It had certified the following class ("Class"): "All members of the Club at Cordillera ('the Club') who paid membership deposits upon joining the Club and who also paid their 2011 annual dues. The Class includes a Sub-Class, defined as follows: All members of the Club at Cordillera who paid a $30,000 deposit to convert their membership to 'Premier' membership." (ECF No. 47-4.) The parties were in the process of exchanging information so that the Class could be notified of this action when it was removed by Defendants on February 9, 2012. (ECF No. 47.)

The Court ordered the parties to show cause as to why it should not decline to exercise jurisdiction over this matter pursuant to the exceptions outlined in CAFA. (ECF No. 10.) The parties filed simultaneous briefs on March 8, 2012. (ECF Nos. 43 & 47.) Because it was clear that the parties did not analyze the statistical data with respect to the residency of the Class Members in the same way, the Court ordered the parties to provide the raw data upon which their analysis was based. (ECF No. 45.) The parties' response briefs were filed on March 22, 2012, along with this raw data. (ECF Nos. 54 & 55.) Both parties also submitted electronic spreadsheets to the Court. Plaintiffs were granted to leave to file supplemental data on March 29, 2012. (ECF No. 58.) In making

4

the specific factual findings set forth below, the Court has carefully examined and analyzed all of the data submitted by all of the parties.

### III.  ANALYSIS

Enacted in 2005, the Class Action Fairness Act ("CAFA") was intended to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Pub.L. 109-2, § 2, 119 Stat. 4, 5 (2005).  CAFA authorizes a federal court to entertain a class action with 100 or more class members, minimal diversity between the parties, and an amount in controversy of at least $5,000,000.  28 U.S.C. § 1332(d).  However, "the diversity jurisdiction authorized in these new provisions is not absolute," and there are two important exceptions written into the statute.  7A Wright, Miller & Kane, Federal Practice and Procedure § 1756.2 (2009).  The circumstances under which a district court must decline jurisdiction under CAFA—the so-called "mandatory exception"—are outlined in § 1332(d)(4). Wright & Miller summarizes that analysis as follows:

> [T]he court must decline jurisdiction over a class action when greater than two-thirds of the plaintiff class members are citizens of the state where the action was originally filed, when at least one defendant from whom significant relief is sought and whose conduct forms a significant basis for the class claims is a citizen of the filing state and the principal injuries or any related conduct of each defendant occurred in the original filing state, and when no other similar class action against any of the defendants has been filed during the 3-year period prior to the instant class action.

*Id.*

The "discretionary exception" is set forth in § 1332(d)(3), which states that a "district court may, in the interests of justice, and looking at the totality of the circumstances, decline to exercise jurisdiction under [CAFA] in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(3).

### A.   Prerequisites for CAFA Jurisdiction

In making a determination of its subject matter jurisdiction over a matter brought pursuant to CAFA, the Court must first "assess the three prerequisites for CAFA jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). The three prerequisites are: (1) minimal diversity between plaintiffs and defendants; (2) at least 100 plaintiffs in the class; and (3) an amount in controversy that exceeds $5,000,000. 28 U.S.C. § 1332(d).

Removal statutes are to be construed narrowly. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1289 (10th Cir. 2001). The party invoking jurisdiction of the federal court has the burden of establishing such jurisdiction. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). The facts necessary to show jurisdiction must appear in the notice of removal or the complaint.[1] *Id*.

---

[1] Plaintiffs allege that the Court cannot look outside of the Notice of Removal to determine if jurisdiction has been established. (ECF No. 47 at 10-11.) However, this argument is contrary to Tenth Circuit precedent. *See Laughlin*, 50 F.3d at 873 (looking at notice of removal and allegations in complaint to determine if the amount in controversy was sufficient to invoke federal jurisdiction).

In this case, it is undisputed that the Notice of Removal did not specify that there were more than 100 Plaintiffs in the Class. However, the Third Amended Complaint states that the case is brought on behalf of Members that paid their 2011 dues and that "approximately 586 other Club Members paid their 2011 annual dues." (ECF No. 3 ¶ 32.) Additionally, the Third Amended Complaint states that it is brought on behalf of the Premier Members and that there are "approximately 160 Premier Members." (Id. ¶ 24.)

The Notice of Removal plainly alleges that there is minimal diversity between the parties and that the amount in controversy exceeds $5,000,000. (ECF No. 1 at 2.) The Third Amended Complaint contains sufficient allegations to satisfy Defendants' burden of showing that there are more than 100 Plaintiffs in the Class. (ECF No. 3 ¶¶ 24 & 32.) Therefore, Defendants have met their burden of showing that the Court has original jurisdiction over this matter. See 28 U.S.C. § 1332(d).

**B.     Percentage of Putative Class that are Domiciled in Colorado**

Whether the mandatory or discretionary provisions of CAFA apply depends on the percentage of members of the Class that are residents of the state where the action was originally filed—in this case, Colorado. See 28 U.S.C. § 1332(d)(3) & (4). The parties here agree that less than two-thirds of the Class are residents of Colorado. Therefore, the mandatory exception set forth in § 1332(d)(4) does not apply.

The parties disagree with respect to whether more than one-third of the Class members are residents of Colorado so as to invoke the discretionary exception of § 1332(d)(3). Defendants conclude that approximately 28-29% of the class resides in

Colorado while Plaintiffs conclude that nearly 36% of the class resides in Colorado. (ECF Nos. 54 & 55.) The basis for the disagreement between the parties arises from two differences in their analysis: (1) which Club Members should be counted in the Class; and (2) the residency of certain Class Members.

Which Club members constitute the Class is governed by the definition of the Class certified by the Eagle County District Court. *See* 28 U.S.C. § 1332(d)(1)(D) (defining "class members" for purposes of CAFA as those persons "who fall within the definition of the proposed or certified class."). Before this action was removed, the state court conditionally certified the following classes:

a.  <u>Class</u>: "All members of the Club at Cordillera ('Club') who paid membership deposits upon joining the Club and who also paid their 2011 annual dues."

b.  <u>Subclass</u>: "All members of the Club at Cordillera who paid a $30,000 deposit to convert their membership to 'Premier' membership."

(ECF No. 47-4.) Based on this class definition, the Court does not count the following as members of the Class: (1) members who did not pay a deposit upon joining the Club; (2) members who did not pay 2011 annual dues because they were waived or otherwise; (3) employees of the club who have no dues obligation; and (4) honorary members who do not have an obligation to pay annual dues. The Court does include those members who paid their 2011 annual dues and then obtained a chargeback or

other refund.[2]  With these parameters, the Court finds that the Class contains 621 Club members.[3]

The parties also dispute the citizenship of many of the Class members. Generally, a natural person is a citizen of the state in which he or she is domiciled, not merely where he or she resides. *See Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir.2006). "To establish domicile in a particular state, a person must be physically present in the state and intend to remain there." *Id*. at 1260.  Courts often consult various factors when ascertaining a party's domicile including: "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity." 13E Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3612 (2009).

At the Court's request, Defendants provided the raw data upon which it based its residency findings.  (ECF No. 55, ex. I.)  Defendants' Exhibit I primarily consists of information sheets and correspondence from the Members' files.  (*Id*.)  Because there

---

[2]  In determining each member's pay status, the Court relied solely on Defendants' representations as to whether dues were paid by a member.  Plaintiffs offered no evidence rebutting Defendants' categorization of the pay status of each member.

[3]  The Court counts each membership as one Class member.  Memberships that list more than one individual as authorized users of the membership were not counted more than once.

has been limited discovery thus far in the case, Plaintiffs state that their categorization of each Members' residency is based on the information provided by Defendants. (ECF No. 54-2 ¶ 6; 58 at 2.) However, Plaintiffs have also presented verified voter registration data showing that a number of the Members that Defendants identified as living outside of Colorado were registered to vote in Eagle County, Colorado. (ECF Nos. 54-4 & 58-2.) The materials contained in Defendants' Exhibit I and the voter registration records provided by Plaintiffs are the only evidence regarding the Members' domicile in the record at this time.

The relevant time for determining the domicile of each Class member is at the time of removal. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 915 (5th Cir. 2001); *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776 (7th Cir. 1986). Much of the information contained in Defendants' Exhibit I is undated or many years old. The voter registration records filed by Plaintiffs are from approximately one month after the Notice of Removal was filed. Because the voter registration records are significantly closer to the relevant time for determining domicile, the Court credits the voter registration records over the residency data contained in Exhibit I. Therefore, the Court finds that the Class members on the voter registration lists are domiciled in Colorado.

There are a number of memberships that are held by entities rather than individuals. Plaintiffs categorize these memberships as domiciled in the state in which the holding entity is incorporated or otherwise based. (ECF No. 54-1.) Defendants categorize these memberships by the state in which the individuals that are named on

the membership accounts are domiciled. (ECF No. 55-29.) Plaintiffs' claims in this case are essentially contract claims. (*See* ECF No. 3.) If these memberships are held by entities, the contracts at issue here are between Defendants and those entities. Therefore, the Court finds that the memberships held by entities should be counted as domiciled in the state in which the entity is domiciled, regardless of the residency of the authorized users on that membership.

Section 1332(d)(3) is invoked if more than 207 of the 621 Class members are Colorado citizens. With the parameters set forth above, the Court finds that more than 215 of the Class members are citizens of Colorado. Therefore, CAFA's discretionary exception applies here and the Court must consider the remaining factors outlined in Section 1332(d)(3).

## C.     Whether to Exercise Section 1332(d)(3)'s Discretionary Jurisdiction

In deciding whether to exercise its discretionary jurisdiction pursuant to 28 U.S.C. § 1332(d)(3), the Court must consider the following factors:

>   (A)   whether the claims asserted involve matters of national or interstate interest;
>   (B)   whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>   (C)   whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>   (D)   whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>   (E)   whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the

              citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F)    whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

The Court will discuss each of these factors in turn below.[4]

This case involves the operation of recreational facilities that are located in Eagle County, Colorado. (ECF No. 3.) The claims at issue here are essentially contract claims and nothing suggests that they implicate federal or interstate concerns. This weighs in favor of declining to exercise jurisdiction over this case.

The Third Amended Complaint brings no federal claims; all claims alleged will be governed by state law. (ECF No. 3.) Because the recreational facilities at issue here are located in Colorado and the contracts were most likely executed in Colorado, Colorado would likely be the state with the most significant relationship to the contracts. *See Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (citing Restatement 2nd of Contracts § 188(2)). Therefore, Colorado law would likely govern Plaintiffs' claims. *See id.* at 1372 (courts should apply the law of the state that has the "most significant relationship" to the issue when determining contract claims). Additionally, the contract related to the Premier Members—who make up the subclass—explicitly provides that Colorado law shall apply to any dispute. (ECF No.

---

[4] The Court notes that Defendants appear to concede that, if more than one-third of the putative class is domiciled in Colorado, the Section 1332(d)(3) factors weigh in favor of declining to exercise jurisdiction. (ECF No. 55 at 5 (declining to address factors based on their contention that less than one-third of the class is domiciled in Colorado).)

47-5 at 12.)  Thus, this factor also weighs in favor of this federal court declining to exercise jurisdiction over this matter.

The Court does not find that Plaintiffs pled their case in a manner that seeks to avoid federal jurisdiction.  (ECF No. 3.)  Plaintiffs allege that there are over 100 members in the putative class, that there is minimal diversity between the parties, and that the amount in controversy exceeds $5,000,000.  (*Id*.)  The Court finds that this weighs in favor of exercising its jurisdiction over this case.

This action was originally filed in Eagle County District Court, the jurisdiction where the property at issue here is located and where Defendants have their principal place of business.  Most, if not all, Plaintiffs own or owned property in Eagle County near the Club's recreational facilities.  (ECF No. 55-1—55-28.)  Thus, there is a clear nexus between Plaintiffs' chosen forum and the parties and events at issue here.  This factor weighs heavily in favor of declining to exercise jurisdiction over this matter.

The Plaintiffs are citizens in thirty-seven states and a number of foreign countries.  (ECF No. 55-30.)  However, as discussed above, more than 215 of the Class members are Colorado residents. The state with the next highest number of Class members—Texas—has only about half as many as Colorado.  Thus, this factor also weighs in favor of the Court declining to exercise jurisdiction over this matter.

Finally, Defendants filed a Notice of Case Association showing that a number of individuals have levied substantially similar lawsuits against them.  But nothing in the record suggests that any of these cases are class actions.  These other individual

cases were all filed in the Eagle County courts.  (ECF No. 8-1.)  The fact that related litigation is also pending in the same jurisdiction in which this action was originally filed weighs in favor of the Court declining to exercise jurisdiction.

In sum, the Court finds that five of the six factors outlined in Section 1332(d)(3) weigh against the Court exercising jurisdiction over this matter.  Beyond these factors, the Court notes this case was filed in June 2011 and the parties were actively litigating it for eight months in the Eagle County court before Defendants filed their Notice of Removal.  The Eagle County District Court had issued a temporary restraining order against Defendants, conditionally certified the Class and Subclass, and scheduled a show cause hearing on a contempt citation for April 11, 2012.  (ECF No. 47 at 2.)  In comparison, this Court has not made any substantive rulings in this case, and the case in this Court is only in its infancy.

Having considered all of the above, the Court finds that the interests of justice weigh against exercising its discretionary jurisdiction over this class action.  *See* 28 U.S.C. § 1332(d)(3).

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Court's February 16, 2012 Order to Show Cause is MADE ABSOLUTE;

2. The Court DECLINES to exercise its discretionary jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(3); and

3. This case is REMANDED to the District Court of Eagle County, Colorado.  The

Clerk shall transmit the record.

Dated this 5th day of April, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge